Filed 05/27/26

VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 25-CV-04605



| **Stephen Whitaker v. City of Montpelier** |
| --- |

# OMNIBUS ORDER REGARDING PENDING MOTIONS

**Title:** Motion for Preliminary Injunction; Motion to Amend Complaint; Motion for Leave to file Reply; Motion to Amend Complaint AMENDED; Motion to Strike (Motion: 7; 11; 12; 13; 14)

**Filer:** Stephen Whitaker for all motions except No. 14, filed by Michael J. Tarrant, II, Esq.

**Filed Date:** December 09, 2025; March 20, 2026; March 26, 2026; March 26, 2026; April 23, 2026

This matter is before the Court on Plaintiff Stephen Whitaker's motion for preliminary injunction and two motions to file a third amended complaint. Mr. Whitaker also asked for permission to file additional briefing on the preliminary injunction. The City of Montpelier ("City") filed a motion to strike Mr. Whitaker's supplemental pleadings from the docket.

The Court previously allowed Mr. Whitaker to amend his complaint twice. Then, on February 23, 2026, the Court dismissed some of those claims. Counts 1 and 2 of the second amended complaint currently remain in this case. In those counts, Stephen Whitaker asserts violations of the Open Meetings Law ("OML"), 1 V.S.A. §§ 310–314, and the Public Records Act ("PRA"), 1 V.S.A. §§ 315–320, respectively, against Defendant the City of Montpelier.

Mr. Whitaker's requests for a temporary restraining order were denied. His four prior requests for preliminary injunctions were denied without a hearing. The Court held a hearing on his fifth request for a preliminary injunction on March 20, 2026, after which he filed a third motion to amend the complaint, which was later withdrawn and replaced with a "substituted" third motion to amend on March 26. The City opposes any form of preliminary relief and any further amendment of the complaint.

There have been a larger than usual number of filings in this case and two of the pending motions relate to that. Mr. Whitaker asked for permission to file a second post-hearing brief after the preliminary injunction hearing. The Court ordered each party to file one brief. The City asks the Court to strike Mr. Whitaker's other supplemental filings and notices. The City did not identify specific dates for those filings, but Mr. Whitaker filed a notice related to alleged OML violations on April 15 and other supplements on April 23 and 27, and May 11.

Mr. Whitaker's motions for a preliminary injunction are denied. His substituted third motion to amend the complaint is granted in part and denied in part as explained in more detail below. The motion to file a second-post hearing brief is denied. The motion to strike is granted.

1.      <u>Preliminary injunction</u>

On October 8, 2025, the City held a public meeting culminating in a vote to approve a contract with White + Burke Real Estate Advisors, Inc., as listing agency, to market and sell the City's Country Club Road property. Mr. Whitaker asserts that certain aspects of the meeting violated the OML: the City did not properly warn the meeting and it conducted an improper executive session.

Mr. Whitaker has filed numerous iterations of his request for a preliminary injunction in this case, which is predicated on his OML claim. Mr. Whitaker appeared to concede at the hearing that his requests for preliminary injunction do not relate to his PRA claim. In any event, there is no clear way in which that claim bears any legal relation to his request for a preliminary injunction. As a result, the Court considers the requests for a preliminary injunction to only relate to his OML claim.

At the March 20, 2026, preliminary injunction hearing, the Court did not take evidence. Rather, the City agreed to treat Mr. Whitaker's version of the facts as true for the limited purpose of consideration of his request for preliminary relief. The City argued that relief was not available to Mr. Whitaker as a matter of law.

The hearing time was spent instead in an effort to clarify the nature of the relief sought by Mr. Whitaker and whether it could have any legal support in the context of this case. Ultimately, the Court allowed the parties to submit post-hearing briefing addressing that matter, and both did. Accordingly, for present purposes only, the Court assumes as correct Mr. Whitaker's assertion that the City violated procedural requirements of the OML at its October 8 meeting.

Mr. Whitaker has clarified the relief he seeks through a preliminary injunction as follows: "For the foregoing reasons, Plaintiff respectfully requests that this Court issue a preliminary injunction temporarily enjoining the City of Montpelier from: (1) executing any developer agreement under or arising from the October 9, 2025 Exclusive Brokerage Agreement with White + Burke Real Estate Advisors; and (2) transferring, encumbering, or committing to transfer any interest in the Country Club Road property, pending a final determination on the merits of Plaintiff's Open Meeting Law claims in Count 1." Mr. Whitaker's Memorandum on Remedy 10–11 (filed Mar. 20, 2026). In other words, so long as this case remains pending, Mr. Whitaker seeks to prevent the City from taking action related to the Country Club property steps consistent with the White + Burke contract.

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Taylor v. Town of Cabot*, 2017 VT 92, ¶ 19, 205 Vt. 586 (citation omitted). To obtain such an injunction, the plaintiff must establish both that there is a threat of irreparable harm and that they are likely to succeed at trial on the merits of the case. *Id*. If those elements are established, the Court must also consider the potential harm to other parties and the public interest. *Id*. The burden of proof is on the party seeking the injunction. It may not be granted "unless the right to relief is clear." *Comm. to Save the Bishop's House v. Med. Ctr. Hosp. of Vermont, Inc.,* 136 Vt. 213, 218 (1978).

2

A preliminary injunction typically awards in advance the relief that otherwise would only appear in the final injunction or it does something to maintain the status quo to ensure that effective final relief will still be possible at the end of the case. See Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2947 (3d ed.) ("Because the twin purposes of a preliminary injunction are to protect the moving party from irreparable injury and to preserve the Court's power to issue a final remedy, the preliminary injunction sought is usually of the same character as that of the final injunction. "). "A preliminary injunction will not be granted when it seeks different relief or when it deals with matters outside the issues in the underlying suit." *Id.*

"In 1957, the Vermont Legislature enacted the Open Meeting Law. The Legislature's purpose was to 'give meaning to Chapter I, Article 6 . . . of the Vermont Constitution.'" *Animal Legal Defense Fund, Inc. v. Institutional Animal Care and Use Committee of UVM*, 159 Vt. 133, 136 (1992) (citation omitted); see Vt. Const. ch. I, art. 6 ("That all power being originally inherent in and co[n]sequently derived from the people, therefore, all officers of government, whether legislative or executive, are their trustees and servants; and at all times, in a legal way, accountable to them."). "To effect that purpose, the Legislature announced that '[a]ll meetings of a public body are . . . open to the public at all times, except as provided in section 313 of this title.'" *Animal Legal Defense Fund*, 159 Vt. at 136. "The intent of the Open Meeting Law [is] 'to give public exposure to governmental decision-making. The purpose is not to create 'vehicles for individuals displeased with governmental action to obtain reversals of substantive decisions.'" *Town of Rutland v. City of Rutland*, 170 Vt. 87, 96 (1999).

The OML concerns the process of municipal decision-making, including the public's right of access to and involvement in it. It is not concerned with the substance or outcome of that decision-making. The substantive quality of any particular municipal policy decision has nothing to do with the OML.

As a result, if a municipality fails to comply with the OML, and therefore did not effectively render some decision, that decision should not simply be deemed void. Rather, the Vermont Supreme Court has explained at length that simply voiding municipal action that violated the OML would be "extreme" and entirely out of step with the purpose of the OML. *Valley Realty & Development, Inc. v. Town of Hartford*, 165 Vt. 463, 467 (1996). If a violation is established, and the violation can be ratified, the municipality typically should be ordered to ratify it. See *id*. at 468 ("By allowing correction at a properly noticed public meeting, we can implement the purposes of the law and minimize undesirable consequences. Consistent with its language, we hold that § 312(a) provides only that actions taken outside of an open meeting . . . are ineffective unless ratified in an open meeting. Once so ratified, however, such actions are effective and binding on the public body. This holding is consistent with the majority of decisions from other jurisdictions."). This is so whether ratification occurs as part of the statutory "cure" process, 1 V.S.A. § 314(b), or separately. See *In re Acorn Energy Solar 2, LLC*, 2021 VT 3, ¶¶ 110–111, 214 Vt. 73.

Mr. Whitaker's request for an injunction does not ask the Court to order the City to immediately hold a public meeting to consider ratification. Instead, it is apparent that the relief that Mr. Whitaker seeks is an attempt at preventing the City from ratifying the action taken at its October 8, 2025, meeting between now and the final hearing in this case. But Mr. Whitaker can

never be entitled to any such relief, and the City already has held a subsequent meeting on March 18, 2026, to ratify its October 8 decision.

To be clear, the City maintains nothing at its October 8, 2025, meeting deviated from the OML, there was no need for ratification, and the ratification meeting was held either in an abundance of caution or otherwise simply to demonstrate that Mr. Whitaker's OML claim has no merit. Mr. Whitaker maintains that the March 18 ratification meeting itself violated the OML in several respects. The Court's decision in this order does not depend on the validity of anything that the City did at either meeting. The point is that the OML empowers the City to ratify its decisions when necessary, and the Court is not empowered, in a case like this, to prevent it from doing so.

In short, Mr. Whitaker asks the Court to freeze the White + Burke contract despite any effort to ratify what occurred at the October 8 meeting. But, Mr. Whitaker's attempt at using the OML to unwind the City's contract with White + Burke, even if only between now and the end of this case, is not relief that responds to any perceived injury under the OML. There is no "status quo" in which the City is unable to ratify decisions otherwise in its power to make. The most Mr. Whitaker could possibly hope for in that regard, if an operative OML violation is proven, is an order compelling the City to ratify properly.

Mr. Whitaker has entirely failed to demonstrate any "threat of irreparable harm" that could possibly support his application for a preliminary injunction, which is denied for that reason. It is unnecessary to address the other preliminary injunction factors.

The reasoning in this decision would extend to all similar requests for preliminary relief of any kind in this case.

2.  Motion to amend—new OML and PRA claims

Following the preliminary injunction hearing, Mr. Whitaker filed a **third** motion to amend the complaint. The Court understands his intent to be to add a claim that the City's March 18, 2026, ratification meeting violated the OML, to add additional claims under the PRA, all relating to record requests made after this case was filed, and to reassert his Count 3 "charter voidance" claim. The City opposes any further amendment.

The **second** amended complaint asserts, in Count 1, that the October 8, 2025, meeting violated the OML for a number of reasons. Mr. Whitaker's PRA claim (Count 2) has never been especially clear. While he clearly sought a copy of the White + Burke contract, that has been produced and can no longer be in issue. However, he also alleges: "Between September and December 2025, Plaintiff submitted multiple written requests for records essential for public oversight of the City's procurement, environmental compliance, and decision-making regarding the Country Club Road property." Second Amended Complaint ¶ 135 (filed Jan. 12, 2026). He does not identify the specific documents but seeks "an order compelling production of all improperly withheld records." *Id*. ¶ 143. It is unclear which, if any, of these requests for production remain disputed.

4

Mr. Whitaker characterizes his motion as seeking Rule 15(a) "amendment" of the complaint. Technically, at least as to Counts 1 and 2, he is more properly seeking Rule 15(d) supplementation. Rule 15(d) provides:

> Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading **setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented**. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

V.R.C.P. 15(d) (emphasis added). There are no reported Vermont cases explicating the rule. It is identical in substance to the analogous federal rule. The general purpose is to allow the pleader to bring "the case up to date" in service of "as complete an adjudication of the dispute between the parties as is possible." 6A Wright & Miller, Fed. Prac. & Proc. Civ. § 1504 (3d ed.). Supplemental pleadings may be used to add new facts as well as new claims. *Id*. Allowing new claims can avoid an unnecessary multiplicity of suits and promote the "convenience" of the parties. *Id*. § 1506.

The City argues that Mr. Whitaker's new OML claim, which is predicated on the City's March 18, 2026, meeting, has nothing to do with this case, implying that it would be inefficient and a distraction to litigate it here. However, the City's representation is that the March 18 meeting was expressly held to ratify the decision made at the October 8 meeting to enter into the White + Burke contract. Mr. Whitaker alleges that both meetings violated the OML. However, if either complied with it, the City's White + Burke decision already is "effective." The Court sees no wisdom in requiring Mr. Whitaker to file a second suit challenging the March 18 meeting when such a suit may become largely moot if it is determined that the October 8 meeting complied with the OML. Efficiency counsels in favor of addressing both meetings in this case.

The Court understands the City's overriding concern to be to prevent this case from spiraling outward from here—it already has been saddled with an extraordinary volume of filings, many of which have done little to advance the litigation productively. The Court grants Mr. Whitaker's motion to amend to add the new OML claim subject to 2 conditions. First, the scope of the new OML claim is limited to asserted challenges to the validity of the March 18, 2026, meeting under the OML. Second, no further amendments or supplements to Mr. Whitaker's pleadings will be permitted absent manifest necessity to avoid substantial prejudice.

Mr. Whitaker's motion to amend, to the extent that he seeks to add new PRA claims, is denied. Though any such claims may seem to Mr. Whitaker to be closely related to all his efforts in connection with the White + Burke contract or the Country Club parcel more generally, the motivations of a public records requester in nearly all cases are entirely irrelevant under the law. See *Finberg v. Murnane*, 159 Vt. 431, 437 (1992) ("Motive is irrelevant to plaintiff's [PRA] access right."). As a result, any new PRA claims are irrelevant to this case because they involve subsequent requests for documents, and they threaten to expand the scope of this case considerably, creating more unnecessary delay. Nor is there any limiting principle – Mr.

5

Whitaker can continue to make public records requests for the same, similar, or even unrelated documents and continue to seek amendment to add them to this lawsuit. Mr. Whitaker's PRA claims are those fairly asserted in his second amended complaint.

Mr. Whitaker's motion to amend is denied insofar as he seeks to add new PRA claims.

3.      Motion to amend—new Count 3 "charter voidance" claim

In the second amended complaint, Mr. Whitaker asserted in Count 3 numerous reasons that he thought the White + Burke contract was void or invalid as violating the City's Charter and its Purchasing Policy. The Court addressed that claim in detail and dismissed it in its February 23, 2026, dismissal decision at 4–7. See Decision on Motion to Dismiss at 7 ("The answer to those matters is the political process, not voiding otherwise valid contracts with third parties."). Mr. Whitaker asserts that the Court somehow "left open" the possibility that he could re-plead that claim as if the originally asserted claim were merely missing an essential allegation that could easily be cured with a corrective allegation. This is not accurate.

Mr. Whitaker's proposed new Count 3 "charter voidance" claim is no different than the one the Court already has dismissed. Mr. Whitaker has taken language from one portion of the Court's decision regarding his argument that the City violated federal grant guidelines and attempted to argue that it entitles him to revive a claim that is not supported by the language of the City's Charter and purchasing policy. That effort fails. The Court declines to reconsider its earlier decision, which speaks for itself. Nothing in the proposed amendment would change the Court's prior analysis.

Mr. Whitaker's motion to amend is denied as to his proposed "charter voidance" claim due to futility. See *Vasseur v. State*, 2021 VT 53, ¶ 7, 215 Vt. 224 ("[A] court may deny a motion to amend when, among other reasons, amendment would be futile.").

4.      Excessive Filings

Mr. Whitaker has a pattern in this case of filing a motion and then filing a flurry of supplements or amendments after that initial filing. This has created a clogged docket that is hard to follow and hard to administer. It also means motions are not ripe within the typical time frame. The Court must provide the City with sufficient time to respond to each supplement that is filed. It appears to the Court that Mr. Whitaker has approached his filings with the understanding that if he makes a mistake or needs to add information, he can do so at any time while the motions are pending by filing a supplement or an amendment.[1] This is inconsistent with the rules.

---

[1] The Court has noticed a pattern where the City files a document, and Mr. Whitaker files an immediate response that is sometimes 5-10 pages or longer. *See* Court's Docket on March 20, March 26, and April 9. Experienced lawyers struggle to turn around well-researched and well-written filings within 24 hours of receiving the opposing party's filing. The Court encourages Mr. Whitaker to use the response time available to him to craft more concise, more organized, and better researched filings.

The Court denies Mr. Whitaker's request to file an additional supplemental brief on the request for preliminary injunction. Mr. Whitaker has filed dozens of documents with the Court related to his five requests for a preliminary injunction. At the hearing, the Court asked for briefing on a very discrete issue – its authority to issue a remedy. One brief from each party on that issue is sufficient to provide the Court with the party's position.

The Court grants the City's motion to strike. The Court did not consider the April 15 filing or any of the supplements filed after that date.

Going forward, the Court will apply the following principles to control the filings on this docket. These principles will apply to both parties equally.

1. The Court will not accept amended filings of motions. Documents prepared for the Court's consideration should be carefully considered and reviewed before they are filed. If either party determines the Court should not consider a particular motion because of an error, they must file a motion to withdraw the motion in its entirety.

2. Once a motion is filed, no supplements to that motion will be permitted. The motion is complete as filed.

3. For every motion that is filed, the Court will accept an opposition, a reply, and a surreply. No further filings will be accepted.

4. Either party may request oral argument if they feel something needs to be communicated to the Court regarding a motion, and the parameters above were not sufficient to allow for that. The request for oral argument should concisely explain why oral argument is needed.

**Order**

Based on the Court's analysis above, it issues the following orders:

(a)     Mr. Whitaker's request for a preliminary injunction is denied.

(b)     Mr. Whitaker's motion to amend is granted in part and denied in part, as follows:

(1)     The proposed OML claim addressing the March 18, 2026, meeting is allowed subject to 2 conditions. First, the scope of the new OML claim is limited to asserted validity challenges to the City's compliance with the OML. Second, no further amendments or supplements to Mr. Whitaker's pleadings will be permitted absent manifest necessity to avoid substantial prejudice.

(2)     Any proposed PRA claims not already appearing in the second amended complaint are not permitted.

7

(3)     The proposed Count 3 "charter voidance" claim is not permitted.

(c)     Mr. Whitaker's motion to file a response to the City's memorandum regarding appropriate the remedy is denied.

(d)     The City's motion to strike supplemental filings is granted.

(e)     The Court will implement the restrictions set forth above regarding filings on this docket.

The Court will set a remote status conference in this case in the next thirty days. The parties should be prepared to inform the Court what tasks remain to prepare this case for a trial. The Court will consider Mr. Whitaker's motion to set a new discovery schedule and set scheduling deadlines at the hearing unless the parties jointly submit a proposed schedule in advance of the hearing.

Electronically signed on May 27, 2026, pursuant to V.R.E.F. 9(d).

_____
Navah C. Spero
Superior Court Judge